IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JONATHAN DAVID WALKER,<br><br>                Petitioner,<br><br>vs.<br><br>ALASKA DEPARTMENT OF CORRECTIONS; MIKE DUNLEAVY, GOV.; KEVIN CLARKSON, A.G.; NANCY DAHLSTROM, DOC; SHANNON MCCLOUD, WCC,[1]<br><br>                Respondents. | No. 3:18-cv-00036-JKS<br><br>MEMORANDUM DECISION |

Jonathan David Walker, a state prisoner then proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Docket No. 1. Walker is in the custody of the Alaska Department of Corrections and incarcerated at Wildwood Correctional Complex. After this Court, through a previously assigned judge, appointed counsel for Walker, counsel filed an Amended Petition ("Petition"). Docket No. 16. Respondent answered and opposed the Petition at Docket Nos. 19 and 26, and Walker replied and briefed the Petition's merits at Docket Nos. 21, 25, and 27.

## I. BACKGROUND AND PRIOR PROCEEDINGS

In 1998, Walker, then 17 years old, and two teenaged companions assaulted and beat to death Wesley Morton, a homeless man. During the sentencing hearing, Superior Court Judge

---

[1] Governor Mike Dunleavy is substituted for William Walker, Attorney General Kevin Clarkson is substituted for Jahna Lindemuth, and Department of Corrections Commissioner Nancy Dahlstrom is substituted for Dean Williams. FED. R. CIV. P. 25(d). The opinion refers to these individuals, who are represented by the Alaska Attorney General, collectively as "Respondent."

Eric Smith described the crime as "a brutal, horrifying thing that was done to somebody who in no way caused it, [or] deserved it. . . . Mr. Walker stabbed Mr. Morton after he had been beaten to a pulp." Docket No. 20-2 at 14. Walker was charged as an adult with first degree murder and evidence tampering. Docket No. 20-3 at 1-4. By agreement with the State, Walker pled no contest to murder in the first degree, and the State agreed to seek a sentencing maximum of 70 years rather than the statutory maximum of 99 years. *See* Docket No. 20-3 at 1-4; ALASKA STAT. § 11.41.100(a)(1)(A); ALASKA STAT. § 12.55.125. On January 21, 2000, Judge Smith sentenced Walker to a term of 70 years' imprisonment without restrictions on his parole eligibility. Because his sentence is less than the statutory maximum, Walker is eligible for discretionary parole after serving one-third of his sentence (23 years, 4 months) in 2023, when he will be 40 years old. *See* ALASKA STAT. § 33.16.090(b)(1); ALASKA STAT. § 33.16.100(a). If Walker does not forfeit any of his good time credit, he will also be entitled to mandatory parole after serving two-thirds of his sentence (46 years, 8 months) in 2046, when he will be 63 years old. *See* ALASKA STAT. § 33.20.010; ALASKA STAT. § 33.16.010; ALASKA STAT. § 33.20.030.

During the sentencing hearing, Judge Smith found by clear and convincing evidence the aggravating factors of employment of a dangerous instrument and deliberate cruelty. Judge Smith determined that neither the aggravating factors of vulnerability of the victim nor the mitigating factor of influence by a more mature person had been proven. Docket No. 20-2 at 4. Judge Smith noted, that when sentencing a defendant under Alaska Law, the Court had to take into account the following five factors: (1) rehabilitation; (2) special deterrence (deterrence of the offender); (3) general deterrence (deterrence of people in the community who might be tempted to do something similar); (4) community condemnation; and (5) isolation for the protection of society. Docket No. 20-2 at 14. With respect to his sentencing decision, Judge Smith commented:

> In my mind the sentencing range is not determined solely by special deterrence and rehabilitation, it's also the difference between the 20 years and the 99 years, all five criteria come into play. . . . Mr. Walker stabbed Mr. Morton after he had been beaten to a pulp. It's about as bluntly as you can put it. Any sentence

that the court imposes has to reflect that fact as a matter of community
condemnation, as a matter [of] general deterrence and because Mr. Walker did
what he did, there is a depth of violence in him . . . That requires some isolation.
Anybody [that] can do that is very dangerous. There's just no way around it. . . .
So the question is the extent to which rehabilitation and special deterrence would
factor in in [*sic*] fashioning any less than a 99-year sentence because I also agree
with Mr. Morton that this kind of crime can and has received that kind of
sentence. I am not in the institutional position to deviate from what the legislature
chooses to be the appropriate sentence in these cases, but I must work within that
framework. The district attorney's analysis was that Mr. Walker's willingness to
admit what he did indicated more positive possibilities for rehabilitation than
other people in his position and that informed their decision to cap the amount of
time that they would ask. [Defense Counsel] and Mr. Walker's family feel that a
far more lenient sentence would be appropriate in light of defendant's age and
prospects for rehabilitation.

Docket No. 20-2 at 14. Judge Smith issued his sentencing decision as follows:

Balancing all of these things it is my judgment that the 70-year cap in the
district attorney's analysis was an appropriate one here. That what might
otherwise be a 99-year sentence is appropriately mitigated you might say or
reduced in light of the defendant's age and in light of his forthright acceptance of
his responsibility for what he did. But I think anything less than that would be to
[*sic*] defeat the criteria and the importance of community condemnation and
general deterrence. Every single time I am involved in one the [*sic*] – as a judge in
these murder cases it is so clear that one person dies and so many lives are
destroyed. Not just the defendant's, the victim's families in many ways, the
defendant's families. It was a tragedy that ripples out so far. And there's nothing I
can say or do that will change that. I have an institutional role to fulfill by
applying these criteria and fashioning a sentence that I think best fits these criteria.

Docket No. 20-2 at 14.

Judge Smith specifically noted Walker's youth: "It is a difficult thing for a judge [to] pass judgment on an 18-year-old boy. He is still a boy. And not take that into consideration in making a decision." Docket No. 20-2 at 14. Judge Smith further commented on Walker's prospect for rehabilitation:[2]

It's pretty clear to me that what happened to Mr. Walker was pretty
inexcusable too. It doesn't in any way, shape or form excuse [for] what happened.
He may have been placed in a place that he shouldn't have been placed, things
may have been done to him that help turn him into somebody who could commit
this brutal crime. . . . To me that plays into rehabilitation and special deterrence. . .
. In my mind the potential for parole is another vehicle with respect to
rehabilitation. For that reason, I will not reduce the sentence any less than 70

---

[2] The sentencing memoranda, presentencing report, letters from both the victim's and defendant's families, and testimony given during the hearing contained information about Walker's abusive father, which caused Walker to run away from home.

years. It places the onus entirely on the defendant to qualify for anything the Department of Corrections may feel will be appropriate in the way of parole.

Docket No. 20-2 at 14-15.

After sentencing, Walker moved for reconsideration, which was denied on February 2, 2000. In denying the motion, Judge Smith noted, "[t]he Court did consider the factors raised by [Walker] and they played a role in the decision to accept the 70-year cap and not impose additional time." Docket No. 20-8 at 5.

Twelve years after Walker was sentenced, the United States Supreme Court decided *Miller v. Alabama,* 567 U.S. 460 (2012). In *Miller*, the Supreme Court held that mandatory life imprisonment without parole ("LWOP") for offenders under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishment. *Id.* at 470. In 2016, the Supreme Court further held that *Miller* announced a new substantive constitutional rule that should be applied retroactively on state collateral review. *Montgomery v. Louisiana,* 136 S.Ct. 718, 732 (2016).

Walker filed in the state courts petitions for post-conviction relief alleging that his sentence was unconstitutional under *Miller*. On July 19, 2017, the Alaska Court of Appeals issued a reasoned unpublished memorandum decision denying his petition. *Walker v. State,* No. A-11784, 2017 WL 3126747 (Alaska Ct. App. July 19, 2017). On October 24, 2017, the Alaska Supreme Court summarily denied his petition for hearing. Docket No. 20-10 at 71. Therefore, Walker has properly exhausted his state remedies by fairly presenting his claim to each level of review in the Alaska state court system. *See Picard v. Connor*, 404 U.S. 270, 278 (1971); *Scott v. Schriro*, 567 F.3d 573, 582-83 (9th Cir. 2009) ("Full and fair presentation additionally requires a petitioner to present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief.").

On February 7, 2018, Walker timely filed a *pro se* petition for Writ of Habeas Corpus. Docket No. 1; *see* 28 U.S.C. §2241(d). Briefing on the Amended Petition is now complete, and the case is before the undersigned judge for adjudication.

## II. CLAIMS FOR RELIEF

In his counseled Petition before this Court, Walker argues that the Alaska Court of Appeals unreasonably applied clearly established Supreme Court law when it determined that Walker's 70-year sentence did not violate the Eighth Amendment's prohibition on cruel and unusual punishment under *Miller*. Docket No. 16 at 5.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly-established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding," § 2254(d)(2). A state court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was

correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing their own criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *See Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

The Eighth Amendment, applicable to the States through the Fourteenth Amendment, proscribes the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII; *see also Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008). This constitutional prohibition "flows from the basic precept of justice that punishment for crime should be graduated and proportioned to both the offender and the offense." *Miller,* 567 U.S. at 469 (quotations omitted). While the Supreme Court has stated that "[a] gross disproportionality principle is applicable to sentences for terms of years," it has further cautioned that it would be the "exceedingly rare" and "extreme" case which would involve a sentence which is "contrary to" or an "unreasonable application of" this principle. *Lockyer v. Andrade*, 538 U.S. 63, 72, 73 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in judgment)); 28 U.S.C. § 2254(d)(1); *see also Rummel v. Estelle*, 445 U.S. 263, 272 (1980) ("Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been

exceedingly rare."). In determining whether to infer gross disproportionality, a federal court should examine whether a petitioner's sentence is justified by the gravity of his triggering offense and his criminal history. *See Ramirez v. Castro*, 365 F.3d 755, 768 (9th Cir. 2004).

The United States Supreme Court has defined specific rights applicable to juvenile offenders. In *Roper v. Simmons*, the Supreme Court held that sentencing juveniles under the age of 18 to death is unconstitutional. 543 U.S. 551, 575 (2005). Following that, in *Graham v. Florida*, the Supreme Court held that it is unconstitutional to sentence a juvenile offender to LWOP in a non-capital case. 560 U.S. 48, 75 (2010). In *Miller v. Alabama*, a case involving a juvenile who was 14 years old at the time he committed a murder, the Supreme Court held that a mandatory LWOP violates the Eighth Amendment where a sentencing court has no discretion to consider the defendant's youth or other "mitigating qualities." 567 U.S. at 476.

The Supreme Court's recent jurisprudence regarding juveniles does not, however, warrant relief here because Walker committed homicide and he was not sentenced to the death penalty or LWOP. His 70-year term of imprisonment thus does not run afoul of existing Supreme Court authority. Nor can Walker demonstrate that this is one of the exceedingly rare cases in which the sentence imposed raises an inference of gross disproportionality when compared to the crime and relevant criminal history. *See e.g., Ewing v. California*, 538 U.S. 11, 29-30 (2003) (sentence of 25 years to life for grand theft of $1,200 of golf clubs was not cruel and unusual); *Lockyer*, 538 U.S. at 77 (two consecutive sentences of 25 years to life for petty theft was not cruel and unusual).

In short, the Alaska Court of Appeal's finding that Walker's 70-year sentence without parole restrictions was not grossly disproportionate in light of the circumstances of the offense was not contrary to, nor an objectively unreasonable application of, any clearly-established federal law and was not based upon an unreasonable determination of the facts. Put simply, Walker's claim fails to raise a federal question. *See* 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 67-68; *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) ("If no Supreme Court precedent creates

clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law."); *see also Carey*, 549 U.S. at 77. Furthermore, despite Walker's arguments in the Notice of Supplemental Authority, Docket No. 28, the Ninth Circuit's recent opinion in *United States v. Briones*, No. 16-1150, 2019 WL 2943490, -- F. 3d -- (9th Cir. July 9, 2019) (en banc) does not compel a different result. As the Supreme Court has "repeatedly emphasized, however, circuit precedent does not constitute 'clearly established Federal law, a determined by the Supreme Court.'" *Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (quoting 28 U.S.C. § 2254(d)(1)). In any event, like the defendants in *Graham* and *Miller*, Briones was sentenced to LWOP. *Briones*, 2019 WL 2943490 at *1. As already noted, Walker was not sentenced to LWOP but instead sentenced to a term-of-years. The *Miller* line of cases and its Ninth Circuit interpretations are therefore unavailing to Walker.

Furthermore, it is well-settled that "so long as the sentence imposed does not exceed the statutory maximum, it will not be overturned on eighth amendment grounds." *Belgarde v. Montana,* 123 F.3d 1210, 1215 (9th Cir. 1997) (quotations omitted). Walker's term of 70 years is well under the statutory maximum of 99 years authorized by the Alaska state legislature for first degree murder. *See* ALASKA STAT.

§ 12.55.125. Thus, Walker cannot prevail on this claim.

## V. CONCLUSION

Walker is not entitled to relief on the Eighth Amendment ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** this Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(B); 9TH CIR. R. 22-1.

The Clerk of the Court is directed to enter judgment accordingly.

Dated: July 11, 2019.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge